Jonathan M. Benson (Bar No. 10908)
**LAW OFFICE OF JONNY BENSON PLLC**
47 East Fort Union Blvd., Suite #210
Midvale, Utah 84047
Phone:  801-255-8472
Fax: 801-255-8474
jonny@jonnyblaw.com
*Co-counsel for Plaintiff*

Tadd Dietz (Bar No. 12497)
**LAW OFFICE OF TADD DIETZ, PLLC**
47 East Fort Union Blvd., Suite #210
Midvale, UT 84047
Phone:  801-505-9243
Fax:  801-505-9968
tadd@dietzlegal.com
*Co-counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

350 S. Main Street, Rm. 150
Salt Lake City, UT 84101

| | |
|---|---|
| ZOSIMO ROJAS,<br>          Plaintiff,<br><br>vs.<br><br>R. LARSON SHEEP COMPANY, L.C.,<br>MOUNTAIN PLAINS AGRICULTURAL<br>SERVICE, RAY TERRY LARSON, in his<br>official and individual capacities, and<br>RANDY J. LARSON, in his official and<br>individual capacities,<br>          Defendants. | **COMPLAINT**<br><br>Case No.:<br><br>Judge: |

Plaintiff Zosimo Rojas ("Plaintiff Rojas"), through his undersigned counsel, hereby

complains against Defendant R. Larson Sheep Company, L.C. ("RLSC"), Mountain Plains

Agricultural Service ("MPAS"), Ray Terry Larson ("Ray Larson"), and Randy J. Larson ("Randy Larson") (hereinafter, "Defendants"), as follows:

## NATURE OF CASE

1.      Plaintiff Rojas brings this action against Defendants to recover unpaid wages, liquidated damages, reasonable attorneys' fees, interests, and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  Further, Plaintiff Rojas liquidated damages, reasonable attorneys' fees, interests, costs, and all other legal and equitable relief as may be appropriate.

2.      Plaintiff Rojas also alleges that the Defendants are liable for breach of contract, quantum meruit, conversion, unjust enrichment, and promissory estoppel under Utah and/or federal common law.

## JURISDICTION & VENUE

3.      This Court has jurisdiction over this action pursuant to the FLSA, specifically 29 U.S.C. §§ 207, 216, and 217.  This court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States, 28 U.S.C. §1332, and supplemental jurisdiction to consider a claim arising under Utah law, pursuant to 28 U.S.C. § 1367.

4.      The statute of limitation under the FLSA for a willful violation is three (3) years.  *See* 29 U.S.C. §255(a).

5.      Defendants are subject to personal jurisdiction in Utah because they reside therein and/or have their principal place of business in Utah.

6.      Plaintiff Rojas's state law claims are so closely related to their FLSA claims that they form part of the same case or controversy.

7.      Defendants conduct business and have agents in the Federal Central District of Utah.

8.     Venue in the Central District of Utah is proper pursuant to 28 U.S.C. § 1391(b) and (c) because all of the Defendants are deemed to reside in this judicial District, and the events and/or omissions giving rise to Plaintiff Rojas's claims occurred within this jurisdiction.

**PARTIES**

**Plaintiff**

       **Zosimo Rojas**

9.     Plaintiff Rojas is a foreign born national of Peru.

10.    Plaintiff Rojas traveled to the United States on February 22, 2006, on a valid H-2A Non-Immigrant Visa for employment purposes.

11.    Plaintiff Rojas began working for the Defendants on February 22, 2006.

12.    Plaintiff Rojas currently resides in Utah.

**Defendants**

13.    Defendants jointly employed Plaintiff Rojas and other similarly situated employees at all relevant times.  Each Defendant has had substantial control over Plaintiff Rojas's working conditions and the unlawful policies and practices alleged herein.

      **R. Larson Sheep Company, L.C.**

14.    Defendant RLSC operates a sheep ranch ("RLSC Ranch") in Ephraim, Sanpete County, Utah.

15.    RLSC is a registered Utah business entity (#2028459-0160), with its Registered Address listed as PO Box 336, Ephraim, Utah 84627.  RLSC also uses the following addresses for their business: 4035 Brinker Avenue, Ogden, Utah 84403-2432; and 179 West 100 South, Ephraim, Utah 84627, as a business address.

-3-

16.     Defendant Ray Larson is the Registered Agent for RLSC.

17.     At all relevant times, RLSC maintained control, oversight, and direction over Plaintiff Rojas, including the ability to hire, fire, supervise, and otherwise control the terms and conditions of his employment.

18.     At all relevant times, RLSC had power over payroll decisions, including the power to retain time and/or work records.

19.     At all Relevant times, RLSC had the power to stop any illegal pay practices to which the Defendants subjected Plaintiff Rojas.

20.     Defendant RLSC is a covered employer within the meaning of the FLSA, and at all relevant times employed and/or jointly-employed Plaintiff Rojas.

### Mountain Plains Agriculture Service

21.     Defendant MPAS is an agent association which assists ranchers in obtaining open range livestock herder laborers through the H-2A non-immigration visa program.

22.     MPAS is a registered Wyoming business entity (#1988-000248275), with its Principal Office listed as PO Box 3777, 811 North Glenn Road, Casper, WY 82602, and Oralia G Mercado listed as the listed Principal Contact.  Carolyn L. Paseneaux is listed as the Registered Agent, with the Registered Address of 5275 Fishing Bridge , 174011 Dell Range Blvd., Cheyenne, WY, 82009.

23.     Defendant Randy Larson is listed as a Director for MPAS, with the listed address of PO Box 336, Ephraim, Utah 84627.

24.     At all relevant times, MPAS was an H-2A Labor Contractor ("H-2ALC"), as they recruited, solicited, hired, employed, furnished, housed, and/or transported Plaintiff Rojas, an H-2A agricultural worker.  See 20 C.F.R. 655.103(b).

25.     At all relevant times, MPAS maintained control, oversight, and direction over Plaintiff Rojas, including the ability to make hiring and firing decisions, and otherwise control the terms and conditions of his employment in the United States.

26.     Defendant MPAS is a covered employer within the meaning of the FLSA, and at all relevant times employed and/or jointly-employed Plaintiff Rojas.

**Ray Larson**

27.     Defendant Ray Larson is an individual who resides in Ephraim, Sanpete County, State of Utah.

28.     Upon information and belief, Defendant Ray Larson owned and operated RLSC during Plaintiff Rojas's employment.

29.     Again, Defendant Ray Larson is the listed Registered Agent for RLSC.

30.     At all relevant times, Ray Larson maintained control, oversight, and direction over Plaintiff Rojas, including the ability to hire, fire, supervise, and otherwise control the terms and conditions of his employment.

31.     At all relevant times, Ray Larson had power over payroll decisions, including the power to retain time and/or work records.

32.     At all Relevant times, Ray Larson had the power to stop any illegal pay practices to which Defendants subjected Plaintiff Rojas.

33.     Defendant Ray Larson is a covered employer within the meaning of the FLSA, and at all relevant times he employed and/or jointly-employed Plaintiff Rojas.

**Randy Larson**

34.     Defendant Randy Larson is an individual who resides in Ephraim, Sanpete County, State of Utah.

35.     Upon information and belief, Defendant Randy Larson owned and operated RLSC, and served as the Director for MPAS during Plaintiff Rojas's employment.

36.     Again, Defendant Randy Larson is listed as a Director for MPAS, with the listed address of PO Box 336, Ephraim, Utah 84627.

37.     At all relevant times, Randy Larson maintained control, oversight, and direction over Plaintiff Rojas, including the ability to ability to hire, fire, supervise, and otherwise control the terms and conditions of his employment.

38.     At all relevant times, Randy Larson has had power over payroll decisions, including the power to retain time and/or work records.

39.     At all Relevant times, Randy Larson had the power to stop any illegal pay practices to which the Defendants subjected Plaintiff Rojas.

40.     Defendant Randy Larson is a covered employer within the meaning of the FLSA, and at all relevant times, employed and/or jointly-employed Plaintiff Rojas.

## GENERAL FACTUAL ALLEGATIONS

41.     Mr. Rojas realleges and incorporates by reference paragraphs 1 through 40 as set forth above.

42.     During all times relevant to this action, Defendants RLSC, Randy Larson, and Ray Larson operated a sheep ranch principally located in Sanpete County, Utah.

43.     Since at least 2006, Defendants RLSC, Randy Larson, and Ray Larson have used Defendant MPAS as their agent to procure a supply of H-2A workers from Peru to work on their ranch.

44.     The H-2A program enables employers to import foreign workers to perform temporary agriculture work in the United States.  8 U.S.C. § 1188.

45.     Prior to procuring an H-2A visa for its employees, an employer must obtain a labor certification from the U.S. Department of Labor ("DOL"), evidencing that insufficient U.S. workers are available to perform the jobs, and that the wages and working conditions offered to the foreign workers will not adversely affect similarly employed workers in the U.S.  See generally *Alfred L. Snapp & Sons, Inc. V. Puerto Rico ex rel. Barez*, 458 U.S. 592, 594-596 (1982).

46.     Regulations found at 20 C.F.R. § 655.100, *et seq*. govern the minimum required contents and terms of job offers made to both U.S. and temporary foreign workers.

47.     In order to obtain an H-2A certification from the DOL, an employer must submit an application/job offer to the DOL.  The regulations prescribe, *inter alia*, the following minimum job benefits:

        a.      transportation and subsistence expenses to and from the worker's home;

        b.      the prevailing wage, the adverse effect wage rate (AEWR), or the legal federal or state minimum wage rate, whichever is highest; and

        c.      coverage by workers compensation insurance.  20 C.F.R. § 655.122.

48.     Employers of H2-A visa holders must also attest that they will comply with all applicable federal, state, and local employment-related laws.

49.     Employers who hire H-2A workers to work in range production of livestock, including sheepherding, pay a wage lower than that of other agricultural work, though such employers are required to provide food that is free of cost.

50.     In Utah, the minimum monthly wage for those engaged in the range production of livestock was $750 per month in 2009, while the minimum hourly wage/adverse effect wage rate for other agricultural workers on H-2A visas was $9.88 per hour in 2010.

51.     In Utah, the minimum monthly wage for those engaged in the range production of livestock was $750 per month in 2010, while the minimum hourly wage/adverse effect wage rate for other agricultural workers on H-2A visas was $10.06 per hour in 2010.

52.     In Utah, the minimum monthly wage for those engaged in the range production of livestock was $750 per month in 2011, while the minimum hourly wage/adverse effect wage rate for other agricultural workers on H-2A visas was $10.48 per hour in 2011.

53.     The terms of work set forth in an employer's H-2A job offer are incorporated by regulation and by operation of law into the contracts under which workers are employed.  29 C.F.R. § 12501.10(d).

54.     Defendants filed an H-2A visa application on behalf of Plaintiff Rojas to allow him to work as a sheepherder, beginning in February of 2006.

55.     The H-2A visa application was submitted, filed, and/or processed by Defendant MPAS, which acted as a joint employer of the sheepherders, including Plaintiff Rojas.

56.     As a joint employer, MPAS had the authority to hire or fire Plaintiff Rojas, control and modify the conditions of Plaintiff Rojas's employment, and act as an agent of all other Defendants at all times hereto.  See 29 C.F.R. § 500.20(h)(5)(iv).

57.     Plaintiff Rojas's H-2A visa application was approved, and it indicated that he would perform the job of sheepherder.

58.     The H-2A application also listed the following terms of employment: wage of $750/month, free housing, transportation and board, bi-weekly pay periods, and worker compensation insurance.

59.     The Defendants submitted various H-2A visa applications on behalf of Plaintiff Rojas from 2006 to 2011, and each was approved by the DOL.

60.     Pursuant to the approved H-2A visa applications, the Defendants contracted with Plaintiff Rojas to work at the RLSC ranch from on or around February 22, 2006 to December 15, 2008, February 16, 2009 until April 6, 2010, and December 5, 2010 until March 1, 2011.

61.     Plaintiff Rojas traveled from Peru to the United States in February 2006 and began to work immediately upon arrival.

62.     During the time that Plaintiff Rojas was employed at the ranch, he worked seven days per week, and typically worked from before sunrise until after sunset.  Accordingly, Plaintiff Rojas worked between 8 and 17 hours per day, depending on the time of the year.

63.     At various times during his employment, Plaintiff Rojas worked all night. For example, during the time of lambing, he worked from 4 p.m. until 8 or 9 a.m. the following morning.

64.     During all periods of work, Plaintiff Rojas was given only a single day off, when he was taken to the hospital with kidney stones.  Even then, Defendants refused to give him time off until he had complained of the pain for 3 days.

65.     In addition to requiring Plaintiff Rojas to work long hours without adequate rest, the Defendants RLSC, Ray Larson, and Randy Larson engaged in a continued pattern of abusive and intimidating behavior towards Plaintiff Rojas throughout his employment.

66.     For example, Defendants repeatedly referred to Plaintiff Rojas as a "son of a b*tch," "motherf*cker."

67.     Defendants RLSC, Ray Larson, and Randy Larson brought food to Plaintiff Rojas only every 15 days, and the food provided was grossly inadequate to maintain minimal health, both in terms of quantity and quality.

68.     Defendants provided primarily canned food to Plaintiff Rojas (mixed vegetables, tuna fish, tomatoes, raman noodles, chile, Shasta soda (on occasion), milk, bologna, potatoes, onion.

69.     Plaintiff Rojas was forced to ration his food supply and to beg for food from other workers whose supplies were equally low.  Plaintiff Rojas's requests for additional food were sometimes ignored by Defendants RLSC, Ray Larson, and Randy Larson.

70.     When Defendants RLSC, Ray Larson, and Randy Larson acquiesced and provided some additional food, they berated Plaintiff Rojas for not rationing his food sufficiently, and told him he ate like an elephant.

71.     Defendants RLSC, Ray Larson, and Randy Larson controlled Plaintiffs Rojas's work schedule and breaks and often would only allow him 15 or 20 minutes to eat one meal a day during work, regardless of the length of the day.

72.     The housing provided to Plaintiff Rojas did not meet the minimum standards required by the DOL.  Plaintiff Rojas lived in a small trailer that had no heat initially, and no fan.

73.     He was not provided with plumbing or running water, and he had to use the unfiltered ranch water and outhouse.

74.     Electricity was provided by a single extension cord which powered a single lightbulb.

75.     Eventually, in the Fall of 2008, he was moved to a larger trailer, which had capacity for running water and a shower, both of which did not work.  The trailer had a small plug-in heater for the winter, but no fan for the summer.

76.     If Plaintiff Rojas or other workers were sick or injured or asked to see the doctor, Defendants called them "women," and refused to allow them time off.

77.     The Defendants generally refused to provide medical treatment for sheepherders who were sick or injured.

78.     In the fall of 2006, Plaintiff Rojas sustained a rib injury while crossing an old fence. The fence broke and he crashed to the ground, breaking his rib.  Defendants RLSC, Randy Larson required Plaintiff Rojas to keep working and did not take him to a doctor or provide any first aid.

79.     No first aid kits were made available to Plaintiff Rojas, and he had no access to medicine or medical treatment.

80.     Defendants RLSC, Ray Larson, and Randy Larson were verbally abusive to Plaintiff Rojas and other workers, constantly calling them degrading/discriminatory names, like "f*cking Peruvians," "tontos" (stupid), and "mecos" (wild or uncivilized Indian).

81.     On one occasion, Defendant Ray Larson became upset, retrieved his rifle, and shot and killed 5 of his dogs.  He then angrily exclaimed to the ranch workers, "Who's next."

82.     Plaintiff Rojas and the other workers felt personally intimidated and threatened.

-11-

83.     In short, Defendants treated plaintiff Rojas similarly to the very animals he was hired to care for.

84.     As a result of the above pattern of abusive and outrageous behavior by Defendants RLSC, Ray Larson, and Randy Larson, Plaintiff Rojas suffered physical illness, pain, and mental anguish.

85.     Plaintiff Rojas lived in fear for his health and safety and reasonably concluded that he could no longer endure working under such conditions.

86.     Plaintiff Rojas left the Defendants' employ because of the mistreatment they subjected him to, and because they would not pay him what he was legally entitled.

87.     During the time he worked for Defendants RLSC, Ray Larson, and Randy Larson, they directed Plaintiff Rojas to spend more than half of his time engaged in activities such as maintaining ranch vehicles, irrigating and harvesting alfalfa, repairing fences, building corrals and pens, cleaning the surrounding areas of the ranch, and performing other various non-range production tasks at the headquarters ranch.

88.     Contrary to the H2-A contract under which Plaintiff Rojas was hired, the majority of the work he was required to perform was not range-production of livestock.

89.     Pursuant to DOL's H-2A regulations, the majority of the work Plaintiff Rojas performed was H-2A agricultural work, for which he was required to be paid the minimum hourly wage or adverse effect wage rate for the given year, plus overtime.

90.     During his employment Plaintiff Rojas engaged in the production of goods for commerce and was entitled to the protection of the FLSA.

91.     At all ties relevant herein, the Defendants were an enterprise engaged in commerce, subjecting them to the requirements of the FLSA.

92.     Defendants did not pay Plaintiff Rojas the minimum hourly wage or adverse effect wage rate for each hour he worked, nor did they pay him the FLSA minimum wage for each work week.

93.     Plaintiff Rojas incurred various costs related to the application for his H-2A visa.

94.     These out-of-pocket costs were for the benefit of the Defendants, and operated as de facto wage deductions from his first week's pay that further reduced his pay below the legal minimum wage.

## **FIRST CAUSE OF ACTION**
**(Violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against all Defendants)**

95.     Plaintiff Rojas realleges and incorporates by reference paragraphs 1 through 94 as set forth above.

96.     At all times relevant hereto, Plaintiff Rojas is entitled to the rights, protections and benefits under the FLSA, 29 U.S.C. §§ 201, *et seq*.

97.     At all times relevant hereto, Defendants were considered to be employers as defined under 29 U.S.C. § 203(d).

98.     At all times relevant hereto, Defendants were considered to be joint-employers, as defined by 20 C.F.R. § 655.103(b), and 29 C.F.R. § 791.2.

99.     While employed by the Defendants, Plaintiff Rojas did not spend more than 50% of his time each year on the range, carrying out range production duties.  See 29 C.F.R. §§ 780.323 - 780.327.

100.    As such, Plaintiff Rojas was a non-exempt H-2A worker, and he was entitled to earn a federal hourly wage.

101.    Accordingly, "If the worker is paid by the hour, the employer must pay the worker at least the AEWR, the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour." See 29 C.F.R. § 655.122(k).

102.    Plaintiff Rojas was entitled to earn the applicable federal hourly wage for each and every hour he worked for the Defendants.

103.    The Defendants' failure to pay compensation for work at at least the federal minimum wage of $7.25 to Plaintiff Rojas was a violation of the FLSA, 29 U.S.C. §206.

104.    Plaintiff Rojas is entitled to unpaid minimum wage compensation beginning three years prior to the filing of this Complaint because the Defendants acted knowingly, intentionally, and willfully and/or showed reckless disregard as to whether their conduct was prohibited by the FLSA.  See 29 U.S.C. § 255.

105.    Upon information and belief, Defendants have also failed to make, keep and preserve records with respect to Plaintiff Rojas's employment sufficient to determine the wages, hours and other conditions and practices in employment in violation of the FLSA, 29 U.S.C. § 201, *et seq*., including 29 U.S.C. §§ 211(c) and 215(a).

106.    As a result of the aforementioned willful violation of the FLSA's minimum wage pay provisions, the Defendants are liable pursuant to 29 U.S.C. § 216(b) for unpaid minimum wage compensation, together with an additional amount as liquidated damages, interest (both pre- and

-14-

post-judgment), reasonable attorneys' fees and costs associated with this action, and any other and further relief this Court deems appropriate.

**SECOND CAUSE OF ACTION**
**(Breach of Contract, Against All Defendants)**

107.    Plaintiff Rojas realleges and incorporates by reference paragraphs 1 through 106 as set forth above.

108.    The Defendants expressly made an offer, orally, and in writing, to pay Plaintiff Rojas a monthly wage of $750.00 to work as a sheepherder.

109.    The Defendants breached their employment contract with Plaintiff Rojas by failing to comply with the terms and conditions of the contract, for which Plaintiff Rojas is entitled to relief pursuant to the common law of contracts.

110.    While employed by the Defendants, Plaintiff Rojas did not spend more than 50% of his time, each year, on the range carrying out range production duties.  See 29 C.F.R. §§ 780.323 - 780.327.

111.    Plaintiff Rojas was a non-exempt H-2A worker he was entitled to earn a federal hourly wage.

112.    Accordingly, "If the worker is paid by the hour, the employer must pay the worker at least the AEWR, the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour."  See 29 C.F.R. § 655.122(k).

113.    Plaintiff Rojas was entitled to earn the applicable AEWR for each and every hour he was engaged in non-range production work for the Defendants.

114.    Plaintiff Rojas was entitled to earn the applicable federal minimum wage for each and every hour he was engaged in range production work for the Defendants.

115.    The Defendant's failure to pay Plaintiff Rojas the applicable AEWR for all of his non-range production work was a violation of H-2A regulations.  See 29 C.F.R. § 655.122(k).

116.    The Defendant's failure to pay compensation for work at the federal minimum wage of $7.25 to Plaintiff Rojas was in violation of the FLSA, 29 U.S.C. §206.

117.    Accordingly, Plaintiff Rojas was entitled to earn wages exceeding the $750 monthly wage stated in the contract.

118.    Plaintiff Rojas is entitled to unpaid minimum wage compensation beginning three years prior to the filing of this Complaint because the Defendants acted knowingly, intentionally, and willfully and/or showed reckless disregard as to whether their conduct was prohibited by the FLSA.  See 29 U.S.C. § 255.

119.    Plaintiff Rojas is entitled to the full amount of the unpaid wages, at the applicable AEWR rate and/or the applicable federal minimum wage rate, six years prior to the filing of this Complaint, as well as interest (both pre- and post-judgment), reasonable attorneys' fees, and costs associated with this action, and any other and further relief this Court deems appropriate.

### THIRD CAUSE OF ACTION
**(Quantum Meruit, Against All Defendants)**

120.    Plaintiff Rojas realleges and incorporates by reference paragraphs 1 through 119 as set forth above.

121.    Plaintiff Rojas performed valuable services for the Defendants.

-16-

122.   The Defendants had knowledge of the uncompensated work performed by Plaintiff Rojas and knowingly permitted, encouraged, and/or required that such work be performed.

123.   Plaintiff Rojas performed this work with the expectation of receiving compensation and/or for fear of being disciplined or discharged for refusing to work as requested.

124.   The Defendants benefitted significantly by accepting the benefits of the labor of Plaintiff Rojas, yet they continued to withhold the legally mandated compensation for his labor.

125.   It would be inequitable for the Defendants to retain the benefits and profits obtained from the work performed by Plaintiff Rojas without paying him adequate compensation for his work.

126.   Plaintiff Rojas is entitled to an award for the full value of the uncompensated work he performed at the applicable prevailing wage, federal minimum wage, and/or AEWR, beginning four years prior to the filing of this Complaint, as well as interest (both pre- and post-judgment), reasonable attorneys' fees, and costs associated with this action, and any other and further relief this Court deems appropriate.

### FOURTH CAUSE OF ACTION
**(Conversion, Against All Defendants)**

127.   Plaintiff Rojas realleges and incorporates by reference paragraphs 1 through 126  as set forth above.

128.   Plaintiff Rojas has the legal right of possession over the wage compensation that the Defendants have unlawfully withheld from him in violation of the H-2A regulations, FLSA, 29 U.S.C. § 201, *et seq*., and common law.

129.   Defendants deliberate and intentional conversion of the legally mandated wages to Plaintiff Rojas constitute a wrongful taking of money that Plaintiff Rojas is legally entitled to.

-17-

130.    Defendants unlawful actions have permanently deprived Plaintiff Rojas of the use and benefits of his legally entitled wage compensation, and has caused Plaintiff Rojas to suffer economic damages.

131.    Defendants have refused to pay Plaintiff Rojas the full amount of the legally mandated wages that belong to him.

132.    Defendants' should be required to disgorge the amount of money they unlawfully withheld from Plaintiff Rojas.

133.    Accordingly, Plaintiff Rojas is entitled to an award for the full value of the uncompensated work he performed at the applicable prevailing wage, federal minimum wage, and/or AEWR, beginning three years prior to the filing of this Complaint, as well as interest (both pre- and post-judgment), reasonable attorneys' fees, and costs associated with this action, and any other and further relief this Court deems appropriate.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

134.    Plaintiff Rojas realleges and incorporates by reference paragraphs 1 through 135 as set forth above.

135.    Defendants have been unjustly enriched by deliberately and intentionally withholding the legally mandated wages that belong to Plaintiff Rojas.

136.    Plaintiff Rojas conferred substantial benefits upon the Defendants when he provided work for them.

137.    Defendants knew of and appreciated the substantial benefits that Plaintiff Rojas conferred upon them.

138.    Defendants accepted Plaintiff Rojas's work services and have been unjustly enriched.

139.    Plaintiff Rojas is entitled to recover the value of the benefit he conferred on Defendants, in an amount at least equal to an award for the full value of the uncompensated work he performed at the applicable prevailing wage, federal minimum wage, and/or AEWR, beginning four years prior to the filing of this Complaint.

140.    Plaintiff Rojas is also entitled to recover interest, (both pre- and post-judgment), reasonable attorneys fees, costs associated with this action, and any other and further relief this Court deems appropriate.

## SIXTH CAUSE OF ACTION
### (Promissory Estoppel, Against All Defendants)

141.    The Defendants made promises to Plaintiff Rojas to comply with the federal law and regulations that govern H-2A workers including but not limited to: FLSA, 29 U.S.C. §§ 201, *et seq.*; Sections 101(a)(15)(H)(ii)(a), 214, and 218 of the INA, 8 USC §§ 1101, 1184, and 1188; 20 C.F.R. §§ 655 Subpart B; and 29 C.F.R. Part 501, *et al*.

142.    The Defendants should have reasonably expected that their promises would induce action and/or forbearance by Plaintiff Rojas.

143.    Plaintiff Rojas was induced to act and/or refrained from acting based on the promises made by the Defendants.

144.    The Defendants broke their promise to Plaintiff Rojas, and as a result Plaintiff Rojas suffered injuries.

145.    Injustice can only be avoided by the enforcement of defendants' promises to comply with the federal law and regulations that govern H-2A workers as alluded to above.

146.     Plaintiff Rojas is entitled to an award for the full value of the uncompensated work he performed at the applicable prevailing wage, federal minimum wage, and/or AEWR that was legally promised to him by the Defendants, beginning four years prior to the filing of this Complaint, as well as interest (both pre- and post-judgment), reasonable attorneys' fees, and costs associated with this action, and any other and further relief this Court deems appropriate.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rojas requests that this Court grant the following relief:

1.     An award of unpaid minimum wage compensation for each and every hour Plaintiff Rojas engaged in range production work, plus an equal amount of liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 206 and 216, in an amount to be proved at trial, up to $56,512.73;[1]

2.     An award of unpaid contractual wages at the minimum wage rate or the AEWR (for violations of the FLSA, breach of contract, quantum meruit, conversion, and unjust enrichment) for each and every hour Plaintiff Rojas engaged in non-range production work, up to $39,125.98;

3.     An award of pre- and post-judgment interest;

4.     An award of costs incurred in bringing this litigation, including but not limited to reasonable attorneys' fees and costs;

5.     For any and all other relief that this Court deems just and equitable.

---

[1]The hours Plaintiff Rojas engaged in range production work and non-range production work, and the corresponding wage rates (minimum wage for range production work and the contractual AEWR rate for range production work) will be determined at trial.

DATED this 20th day of July 2012.

LAW OFFICE OF JONNY BENSON PLLC

/s/Jonathan M. Benson
Attorney for Plaintiff

DATED this 20th day of June 2012.

LAW OFFICE OF TADD DIETZ, PLLC

/s/Tadd Dietz
Attorney for Plaintiff

C:\Users\JonnyBenson\Documents\SugarSync Shared Folders\Tadd Dietz\LOJB on Tadd's PC\Clients\Rojas, Zosimo\Pleadings\Rojas Complaint.wpd